Good morning, Your Honours. May I please report? This case is about whether the CIT has authority to grant prospective relief as to future entries. ICDAS's incorrect day-minimus margin in the sixth review, its second consecutive day-minimus margin, affects ICDAS's future entries because a third consecutive zero margin renders ICDAS eligible for revocation, according to the regulations of 19 CFR 351, section 222. In the seventh review, they were relieved from work because of the three consecutive years, right? That's correct, Your Honour. And is that a termination on appeal? Yes, it is, Your Honour. And is the contention being made that in reviewing this seventh determination, seventh review, that this issue that you're raising now can also be decided in that context? I don't believe it can be decided in that context, Your Honour. I'm not attempting to evade your question. I'm not certain of the answer to your question. I believe it cannot be the government in this particular case has contended that each review stands on its own, and so both parties agree that if this issue can't be raised in challenging the sixth review, it can't be raised at all, can't be raised in connection with the seventh. To the best of my belief, that is correct, Your Honour. So this is the only place where we can address the sixth review margin. In fact, ICDAS obtained, as you mentioned, a zero margin in the seventh review, and those results are currently on appeal. This case, we believe, is simple. Zenith is about current or period of review entries. Zenith applies to cases involving challenges to antidumping duties assessed on current period of review entries. In those cases, because the statute does not provide for reliquidation, liquidation of current period of review entries terminates the CIT's jurisdiction. On the contrary, Amerisville's case is about future entries. In cases involving future entries, the CIT's jurisdiction is set forth in 19 U.S.C. 1516a is not extinguished by liquidation. The CIT has recognized that potential harm to future entries is reputable, notwithstanding liquidation of period of review entries. There is basically a conflict between our case and the case of Hilsa, which was decided by Judge Rostami, to the contrary of what Judge Rostami decided in our case. And there is discussion of cases where the CIT has recognized potential harm to future entries is reputable in a case, a Newcorp Court case, pages 23 to 26 of the Newcorp Court case. Cases such as Newcorp Court, FMC, Torrington, Timken, denying applications for preliminary injunctions based on the applicant's inability to show immediate and irreparable harm requirements for the grant of a preliminary injunction stand for the proposition that the CIT may grant prospective relief, such as that sought by Ameristeel, as to future entries. The very possibility of prospective relief caused those courts to refuse to issue preliminary injunctions. There was no showing of irreparable harm in those cases. What Ameristeel is requesting from the court would not change the law or contradict the line of cases starting with Zena, or any of the other cases cited by the defendant appellees. Those cases simply do not address this situation. And finally, as Judge Dyck noted, Judge Rostami's recent decision in HILSA is consistent with the finding that the CIT heard in Ameristeel's case. As the HILSA court recognized, on facts very similar to those present in Ameristeel's case, and I quote, if retaining the status quo may have a legal effect on subsequent proceedings, the action should continue. In Ameristeel's case, retaining the status quo, namely ICDAS's six-review margin, may have a legal effect on ICDAS's eligibility for revocation. Therefore, the action should continue. And there's one other issue that may I should address, which is a case that was brought to the court's attention, a decision of this court dated August 30 in SKF. I believe the government's attorneys brought the case to the court's attention. That case is also indistinguishable from this situation in that that case, again, dealt with liquidation of current period-of-review entries, did not deal with prospective relief to future entries. And the only issue there was whether Zenith applied to a situation where the entries were liquidated based on the action of customs versus liquidation based on operation of law. That is entirely irrelevant to us. What effect did your clients, not seeking an injunction to suspend liquidation, what effect should that have on this court's determination? With respect, Your Honor, none whatsoever. Not with respect to this particular issue, which is the margin in the six-review. Well, it does affect the entries that were subject to liquidation.  Those can be challenged. Absolutely, Your Honor. Absolutely. We've conceded that, and we've agreed with that, and we have no issue with that. The only issue here is whether the court should address Ictas's six-review margin because it does affect Ictas's eligibility for liquidation and, therefore, future entries. Well, is there a case of controversy here? We believe that there is a case for controversy, Your Honor, in that, in fact, the margin will affect Ictas's eligibility for liquidation. If we don't have an opportunity to address the margin here, we don't have the opportunity to address the margin anyway because, again, as Judge Dyer asked, we don't have an opportunity to address the six-review margin in an appeal from the final results of the seventh review. In fact, when we look at the government's brief on that particular point, if one is interested, at pages 9 to 10 of the government's brief, they basically make the point that each review stands on its own and is an independent determination. The issue of revocation is an issue that traverses reviews essentially, again, because the regulation sets forth three consecutive zero margins as the prerequisite for revocation. The court has jurisdiction pursuant to 19 U.S.C. 1516A, which has not been extinguished by liquidation vis-à-vis the margin, which has nothing to do with current review entries. That's all I have, Your Honor. Any more questions? Okay. No, that's it from the other side.  And we'll show you in a moment, Your Honor. Thank you. Mr. President, good morning. R.R. Sparrowley. I quiz the court. Do you agree that Canada placed this issue in the seventh review? Yes, Your Honor. So everybody agrees with that? Yes, Your Honor. So how can that be true if it's going to impact the seventh review? Because pursuant to the plain language of 1516A, there's been a final and conclusive liquidation of the entries. Any final court decision pursuant to 1516AE could have no effect. But the statute says it can't have any effect on the liquidated entries. But it doesn't say it can't have any effect on any service. Well, any final court decision would be advisory because there is no Shinye type challenge to the liquidation of the entries. I don't understand. It would have an effect. You agree that if they won here and it was determined that the zero dumping margin was incorrect, that that would affect the ability to revoke the order in the seventh review, wouldn't you? No, Your Honor, we wouldn't. The court has no authority to decide. The actual margin is what the final and conclusive liquidated margin is. That is what the holding of this court is in CMS. It is final and conclusive as to all persons. What you're saying is there's no jurisdiction to make a determination of dumping margin unless it's in connection with what relation? That's what the plain language of 1516AE. I don't see that in the plain language. Show me where the plain language is. The structure of the statute requires that the entries be liquidated in accordance with a final court decision. The entries have already been liquidated in this case. That's just a statement. It can't affect the liquidation. But the final court decision would have no effect. It could have no effect. Why not? Because under CMS, this court has held unambiguously that once the entries are liquidated, that is final and conclusive on all persons. It's conclusive as to the liquidation, but it doesn't mean that it's necessarily conclusive as to the revocation of the dumping margin in the seventh review. As a matter of law, there's no challenge here by Gerdau as to the lawfulness of the liquidation. Therefore, the margin is correct as a matter of law. My problem is where does the statute say that? It doesn't say that the margin is correct. It says that the liquidation can't be challenged. I don't see any provision in the statute that says that once the thing is liquidated, that the margin is established. If you could show me language like that, I'd be happy to look at it. I don't see that in the statute. The statutory structure provides that certain decisions are revoked. I'm not talking about structure. I'm asking where's the language? What language tells us that it's established and it can't be challenged once the liquidation is over? There isn't the claim that there isn't any frame to be negative that way. The authority for the court is to review determinations. Once a determination is made, the entry may be suspended by virtue of an injunction. Here, Gerdau waived its right to continue the challenge by not seeking an injunction. Therefore, there's a plain holding. If there's no language that says it's final as to the determination and the language is it's only final as to the liquidation, why can't the case go forward? Because then you'd have a final, lawful liquidation of the margin. And then you'd have a fictional advisory decision by the court. But the point is it's not advisory. It affects the Seventh Review and the ability of Congress to revoke the ending of the order. Your Honor, this court in Zenith addressed the situation in Zenith. By the way, this plaintiff is identically situated to Zenith. And all Your Honor needs to do is look at page 827. But Zenith doesn't involve the question of whether the dumping order can be revoked. It only involves the question of whether, if there's no injunction, you lose the right to challenge the liquidation. Zenith involved, the facts of Zenith are identical here. Zenith involved a situation in which there was a petitioner, such as we have here, challenging a diminished margin. Actually, where does Zenith talk about the revocation of the dumping order in the three years? It doesn't talk about the revocation. But it's not involved in that case. Is it not the case? But that argument was available to Zenith. I'm sorry, Your Honor. That argument was available to Zenith. OK. The argument was available. But we didn't address that question. No, Your Honor. Yes, we didn't address that question. Yes, Your Honor, you did not address that. But revocation, the authority, Congress granted commerce, the authority to revoke the statute. Commerce happens to promulgate a regulation which provides for a de minimis mechanism. It is not, as Chief Judge Rusani admitted in HILSA, it does not lead inextricably to revocation. It is one way in which, under Congress's regulation, Congress does not have the power to expand the Article III case in controversy requirement, or to expand the jurisdiction of the CIT, of the Court of Natural Treaties. Excuse me. But in this case, all the regulation does is set up one of several criteria that the Secretary will look at in deciding whether to revoke the order. One of the things that the Secretary will look at is whether there are three de minimis margins in a row. By the way, Zenith has a de minimis margin. Is there any question that the Seventh Review would have come out differently if the CIT or this Court were to set aside the zero dumping margin in the Sixth Review? The Seventh Review? Is that correct? The Seventh Review would have come out differently if we were to hold that there was improper dumping margin in the Sixth Review. Not necessarily. The Department of Commerce may consider, with the primary which is charged by Congress to do, is a side order and revoking an order where there's a likelihood of continued dumping. Commerce, even if there are three de minimis margins in a row, Commerce can still decline to revoke the order. That's not the question. What happened was the Commerce, as I understand it in the Seventh Review, said three years of zero margins, we've decided to revoke. And my question is, if we hope that the Sixth Margin should not have been a zero margin, that would have to be set aside, the decision in the Seventh Review. Your Honor, I don't mean to be argumentative here, but the Court doesn't have any authority to do that because the margin has been decided. You're not accepting my hypothetical. Hypothetical is, if we were to say there's jurisdiction, I understand you say there isn't, and we were to say that the Sixth Review incorrectly assigned a zero margin, and it should have been higher than zero, then the Seventh Review determination revoking the dumping order would have to be set aside, right? It would have to be remanded back to Commerce to decide whether revocation would still be appropriate under the circumstance in which it's one of its criteria and its regulation is not satisfied. Yes, I agree with that, Your Honor. But the question is, the statute has to make sense. And Giraud has offered no explanation as to why it did not seek an injunction. That is what Congress intended that it do, to prefer its right. It makes a statement in its brief that is flatly inconsistent with this Court's holding in Zenith, which is that it would not have been able to establish entitlement to an injunction because it wouldn't have been able to establish irreparable harm. This Court in Zenith expressly addressed the very situation we have here involving a domestic petitioner, and what is the meaningful relief that this petitioner can get? It is a challenge to the assessment rate, which, by the way, all Giraud did in its complaint is exactly what Zenith did, which was challenge the assessment rate. There's nothing in its complaint that refers to revocation or the possibility of future revocation. It was looking to get a remand back to Congress to get a higher rate. That is exactly what happens in Zenith. That's what Zenith was trying to do. And this Court in Zenith held that even the possibility of a change in the cash deposit rate, because that was still an open issue in Zenith, even that possibility was not enough to erase the specter of irreparable harm because of the liquidation of the entries. That is what the meaningful relief that a domestic petitioner can seek. And for Giraud to state in its brief that it could not have obtained or could not have established irreparable harm in this case is flatly contrary to this Court's controlling precedent in Zenith. I don't think they're not saying they couldn't establish irreparable harm. They're just saying they don't care about liquidation. They only care about the revocation. And they say we don't have to litigate the liquidation. We don't have to challenge that because we have another interest, which is in the revocation, and we only want to challenge the revocation. And they're saying if we're going to challenge the revocation, then we have to attack the dumping of our children in the Fifth's review now and not later as part of the Seventh Review. Well, Your Honor, putting aside, assuming we disagree or we are on a threshold authority issue, that is a colossal waste of judicial resources. First of all, commerce, as I mentioned earlier, does not have the power to create Article III cases of controversy by virtue of its regulation. That's a regulation that's clearly lawfully promulgated, and it's consistent. I don't understand how there cannot be a case of controversy if the change in the dumping margin for the Sixth Review wouldn't validate the Seventh Review order. There's no case of controversy. You don't think that should happen. They think it should. Because it's inherently speculative. Commerce has authority, granted to it, to decide whether to revoke it or not. What's speculative about it? You just agreed five minutes ago that if we hold the dumping margin shouldn't have been de minimis, that the Seventh Review revocation would have to be set aside. All I admitted was to go back to commerce to decide whether or not revocation is still appropriate. Whatever the case is, the Seventh Order would have to be set aside. That sounds like a controversy. Your Honor, this is a speculative term. This is a framework by which commerce, through its regulation, set up sort of criteria to decide whether it should revoke, consistent with its statutory authority. It does not expand the scope of review under 1516A of the entries that have been liquidated, that have been lawfully liquidated, that there's no question that they're lawfully liquidated. The idea that it could maintain an action to basically have a court decide whether or not an argument had, assuming for argument's sake, that Jodo had obtained an injunction that, in fact, the margin would have been X rather than the actual margin, is entirely speculative. And I say that one more time. Thank you, Your Honor. Good afternoon, Your Honor. May it please the Court? The statutory provisions here focus on the determination of dumping margins, and they serve as the basis, under the statute, for assessing duties in order to liquidate the entries. And it's an entry-based statutory set of provisions. That is the focus of the annual review provisions, and that is what can be appealed to the court. So where does the statute say that you can't challenge commerce's determination unless you're also challenging the liquidation? Where does it say that? What it is focusing on is that it does not say that specifically, but the structure is set up to cover the margins which are used as the basis for liquidations and cash deposits. There are two recognized reasons, two recognized purposes of a review, and the statute does not recognize in those provisions in 1675 that one of the purposes of a review is to determine a margin that might be used in some way in a future revocation determination, under the three-year revocation provision, or under a sunset review, which is a five-year revocation determination, or to determine what the margin is and how the margin should be calculated, because that issue may come up in the next review. I mean, that was the issue in the American Great case, where the appellant was claiming that the issue went on as a separate rate, would come up in the next review, and it needed a determination on it. The entries had been liquidated. The court threw the case out, and that has been the rule since Zenith, and that has been consistently applied. Zenith didn't involve a three-year review issue, right? Zenith itself did not, but it involved margins, and appellants here are focusing on the margins, and Zenith said the determination of those margins in the context of a review, you're going to lose that right to review once you have liquidated the entries. You're going to lose the right to challenge the liquidation unless you get an injunction, and in this case they're saying we don't care about the liquidation. We only care about the revocation that will take place in the seventh review, and they say the statute allows us to challenge Congress's determination. It doesn't require us to challenge the liquidation, and so the court has jurisdiction to resolve all the controversy, and what we're saying, what the government is saying, is that the jurisdiction of the court is based upon the statutory provisions that call for margins to be used in connection with entries, in connection with liquidation, and with cash deposit rates. But the problem is it doesn't say that. It says that you can bring an action to challenge Congress's determination, and it says if it's liquidated, you can't challenge the liquidation. It doesn't say if it's liquidated, you can't challenge the margin and the dumping rate. Look, the problem is that you have a long line of cases now over all these years where every time this issue has come up and there has been liquidation, the courts have found, except for the one decision cited in the Ilson decision, the courts have found that that ends the jurisdiction of the court. Oh, and have you decided that issue with respect to the revocation question? That is correct. That has not been specifically addressed by this court. But my point is that if you start finding that type of exception, then you're virtually eliminating the finding in ZMIP because virtually every case the petitioners or the party can come up with a reason as to why the decision on the margin in that particular review could have an effect with respect to revocation under the three-year provision, with respect to sunset. In the sunset reviews, the department looks back at the margins for preceding years. So that makes every margin relevant. And you would, in effect, have a situation where if the court were to allow this exception, you would eviscerate ZMIP because then in every case there would be a basis for saying all these cases can go forward because the margins can affect the future decision. Under ZMIP, you still can't challenge the liquidation unless you proceed to get the injunction. You've lost the right to challenge the liquidation, but ZMIP still has a lot of significance, doesn't it? You can't challenge the liquidation, but in many of these cases, the parties are trying to challenge also the cash deposit rate or the margins because the margins can have an effect or the basis on which the margin is calculated, the way in which the margin is calculated can have an effect on what the Department of Commerce does in future reviews. The legal principles that are applied can affect another review, as in the American Break case. And what I'm saying is if you start opening the door to saying anytime you can conjure up a reason why the decision on the margin and how the margin is calculated in a particular case could have an effect in a future review, then you will, in effect, say that ZMIP doesn't mean anything. I think we've joined that issue. Thank you, Mr. Schneider. Thank you very much. Mr. Zanuffo, would you like to rebuttal time? Thank you. If you don't mind rebuttal, just a couple of points. In connection with American Break, the American Break case, again, is irrelevant in that in that particular case, the appellant was interested in a legal principle, and that is when a respondent should have received a separate anti-dumping rate, and that would have affected already liquidated current period of review entries. As regards the future entries, the decision was without prejudice to the appellant because, if relevant, the appellant could raise the issue and have it addressed in a subsequent review, which, again, is not our situation here. Can you address the opening of the floodgates of litigation argument posed by counsel to the government? Thank you. I don't think there will be an opening of the floodgates to the extent that many of the litigants in these cases, many of the plaintiffs in these cases, are, in fact, interested in the duties that have been assessed in the current review. They will be required, continue to be required, if Ameriscal succeeds in this, even if Ameriscal succeeds in this case, they'll continue to be required to file preliminary injunctions suspending liquidation because we have acknowledged that in our particular case we cannot challenge the liquidation. Liquidation of current period of review entries is not an issue in this case. If it is an issue for a litigant, the litigant will have to file for a preliminary injunction and obtain one. And so litigants that are interested in that will file for those. In a sense, what the defendant appeals are asking is that all plaintiffs file for preliminary injunctions, which we think is a tremendous waste of judicial resources and counsel's resources. Filing for preliminary injunctions where a preliminary injunction should not be required because we're talking about prospective relief to future entries. Okay, it's enough of the questions. Thank you. All rise. The honor court is adjourned until tomorrow morning at 10 a.m.